ROBERT A. DAVIS, RESPONDENT, *v.* CATHARINE B. SEAMAN AND ANOTHER, ADMINISTRATORS OF CATHARINE M. WETHERBEE, DECEASED, APPELLANTS.

*Evidence — books of account constitute a transaction with a deceased person — Code of Civil Procedure, sec.* 829.

Upon the trial of a claim against the estate of a deceased person, referred under the statute, the claimant, a physician, sought to establish the rendering of the services by his books, and was allowed to testify that he kept correct books.

*Held,* that, within section 829 of the Code of Civil Procedure, the books constituted "a personal transaction or communication between the witness and the deceased person," and that his evidence was incompetent against the administrators of the deceased person.

APPEAL by the defendants, Catharine B. Seaman, as administratrix, and John M. Baker, as administrator, of Catharine M. Wetherbee, deceased, from a judgment of the Supreme Court, entered in the office of the clerk of the city and county of New York on the 2d day of June, 1891, in favor of the plaintiff for $440 and costs, after a trial before a referee appointed pursuant to the provisions of the statute relating to disputed claims against decedent's estate.

*A. M. & G. Card* and *W. E. Steiger,* for the appellants.

*George W. Hopkins,* for the respondent.

O'Brien, J. :

The plaintiff's claim was for professional services alleged to have been rendered defendants' intestate between June 22, 1888, and January 22, 1889, amounting to $500. The referee to whom the claim was referred found in favor of the plaintiff in the sum of $440; and from the judgment entered upon the referee's report this appeal is taken.

The question presented is, whether the conclusion reached by the referee was founded upon any sufficient and competent evidence. The burden was upon the plaintiff of showing employment, professional services, and the extent and value thereof. To establish these, the only evidence offered by plaintiff was his books of account and the testimony of one A. S. Diller. What is necessary to be established ordinarily before books are admissible in evidence has been clearly stated in *Vosburgh* v *Thayer* (12 Johns., 461), which has been frequently referred to and followed. Where, as here, however, it is proposed to introduce a book of account as against the representatives of a deceased party, the additional fact must be kept in mind that section 829 of the Code prohibits the claimant from testifying " concerning a personal transaction or communication between the witness and the deceased person." As said in *Knight* v. *Cunnington* (6 Hun, 105): " Where, therefore, a plaintiff desires to establish his case against a deceased debtor by resort to his books * * * he must establish his employment, if his claim be for services rendered, by competent evidence; and then by proof that he keeps correct books of account, and that his debtors have settled with him finding them to be correct, he may be enabled to put them in evidence. * * * It may be said also that the plaintiff's right to prove the correctness of his books himself, or to make any statement with regard to them, against a deceased person is extremely doubtful. * * * The book certainly relates to a communication or transaction with the deceased, and is, as already suggested, the very foundation on which his claim rests."

In the case of *Knight* v. *Cunnington* the court said that it was unnecessary to examine the question as to whether the plaintiff could prove the correctness of the books himself, because the testimony was not objected to, nor was the question presented upon proper exceptions. Here, however, the objection and exception

were properly taken, and the testimony of plaintiff in proof of the correctness of his books was received over the defendants' objection.

Exclusive of plaintiff's testimony, two witnesses were examined, patients of the plaintiff, who testified to having made payments for professional services rendered by the doctor to their families. The first witness, one Hackett, testified that the doctor presented him a bill which conformed to the amount which he had agreed to pay for certain services to be rendered, and that he had paid the bill when presented. He testified: " I never saw any books of account that belonged to the doctor, never examined any books, and any payments I made, I did not make because he presented a bill; I made an agreement with him for the confinement; I paid him every time he came, after that one dollar for every visit." It is true this witness testified that he saw books of account, and that when he went for medicine he saw the doctor write it down in the book; but he stated that he never examined the book.

It is difficult to reconcile the witness' testimony; nor is it necessary, because it did not tend to establish the facts necessary, upon the authority of *Vosburgh* v. *Thayer* (*supra*), to make the books of the plaintiff admissible.

The other witness, Nicholson, testified that he never saw any books, and that any settlements made were without reference to the plaintiff's book of account.

We are thus left in this case with the plaintiff's evidence alone to support the books of account, which, if eliminated from the case, would leave it barren of any evidence in favor of plaintiff's claim against the deceased.

The respondent, in support of the view that the testimony of plaintiff as to the correctness of the accounts is competent against the representatives of a deceased person, cites *McGoldrick* v. *Wilson's Executor* (18 Hun, 443). It will be seen, however, by an examination of that case that the testimony of McGoldrick was not objected to, and that several witnesses were examined who were employed by McGoldrick in the business, and who testified in regard to the manner in which the accounts were kept, which was, in effect, that memoranda were made on a slate and then transferred to an account book, and it was held that such an account book was admissible in evidence because there was nothing in the case which would create

a suspicion " in regard to the honesty or accuracy with which the accounts were kept." Here, however, as already stated, the objection was taken to the admissibility of the books of account, and their correctness was not supported by other witnesses. We think, therefore, in view of the character and kind of testimony adduced to support the correctness of the book of account offered, that the referee erred in receiving it.

We have already said that, exclusive of this book, there was no other evidence in the case to support the claim. It is true that one Diller was examined, who testified that he and the doctor both lived in the house with Mrs. Wetherbee during the spring and summer of 1888, during which time she had been more or less sick ; that she went to bed on the twenty-second of September and died on the twenty-second of January. This witness does state that Dr. Davis was there from about the nineteenth of January until the time she died, and that she had a number of prescriptions filled that the doctor had ordered. He also testified that up to the last year of her life Mrs. Wetherbee was a remarkably healthy woman ; that she used to call upon the doctor, but whether such calls were social or professional he could not tell, but that he saw them together, he could not recollect the number of times.

Taking into consideration the fact that the doctor lived in the same house with the deceased, that they were frequently together, and that even this witness is unable to determine whether the calls made by the deceased upon the doctor, or by the doctor upon the deceased, were professional or social, this testimony is stripped of any weight or force, except so far as it relates to the visits which he testified he knew the doctor made professionally between the 19th of January and the date of her death on January 22, 1889. We think, too, having in view the fact that this witness and the doctor were living in the same house with the deceased, and the questions that arose in respect to their exact relations, that in favor of the representatives of the deceased some greater latitude should have been allowed the latter upon cross-examination by the referee.

We are of opinion, therefore, that not only was it error to have received the book of account, but that an examination of the entire record presents no such satisfactory proof as could justify a finding by a referee or by this court that the burden which was placed upon

the plaintiff of establishing his claim had been made out by satisfactory competent evidence.

We think, therefore, that the judgment appealed from should be reversed, and the claim referred to another referee, with costs to appellants to abide the event.

VAN BRUNT, P. J., and BARRETT, J., concurred.

Judgment reversed and claim referred to another referee, with costs to appellants to abide the event.