(87 Misc. Rep. 187)

BELLOWS v. BENDER et al. (No. 165.)

(Supreme Court, Appellate Term, Second Department. October, 1914.)

1. EVIDENCE (§ 376*)—BOOKS OF ACCOUNT—EVIDENCE OF ACCURACY.

Testimony of witnesses that they settled their accounts with plaintiff, not by his books, but by bills rendered to them, is not evidence of the books' accuracy necessary for their admission under the account book rule.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1628–1646; Dec. Dig. § 376.*]

2. EVIDENCE (§ 376*)—BOOKS OF ACCOUNT—EVIDENCE OF ACCURACY.

Plaintiff's testimony that he kept correct books of account is insufficient to show their accuracy, necessary for their admission under the account book rule.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1628–1646; Dec. Dig. § 376.*]

3. WITNESSES (§ 165*)—COMPETENCY—TRANSACTION WITH DECEDENT.

Testimony of plaintiff, in an action for services rendered decedent, that certain books are his books of account, that he kept no clerk, and that his custom was to make entries therein in the usual course of business, with regularity, mere preliminary evidence, is not within Code Civ. Proc. § 829, making him incompetent to testify to a personal transaction with decedent.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. § 687; Dec. Dig. § 165.*]

4. WITNESSES (§ 165*)—COMPETENCY—TRANSACTION WITH DECEDENT.

Testimony of plaintiff, in an action for services rendered decedent, as to his having an account in his books with deceased, that it was a true transcript of his transactions with decedent, and that the account was never paid, is violative of Code Civ. Proc. § 829, making him incompetent to testify concerning a personal transaction with decedent.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. § 687; Dec. Dig. § 165.*]

5. WITNESSES (§ 165*)—TRANSACTIONS WITH DECEDENTS—ACCOUNT BOOKS—ENTRY OF BILL SENT.

The value of services rendered by plaintiff to deceased cannot be proved by entry in plaintiff's book of the bill which he sent, after deceased's death, to his estate.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. § 687; Dec. Dig. § 165.*]

Appeal from Municipal Court, Borough of Brooklyn, Second District.

Action by Charles M. Bellows against Irene Bender and others, executors of Sylvanus Don Hoyt, deceased. From a judgment for plaintiff, defendants appeal. Reversed, and new trial ordered.

Argued October term, 1914, before KELLY, KAPPER, and BLACKMAR, JJ.

Milton M. Goldsmith, of New York City, for appellants.
Louis Ehrenberg, of Brooklyn, for respondent.

KAPPER, J. To prove the claim of the plaintiff, a physician, against the defendant's executors for professional services rendered to their testator, the physician's book of visits was admitted in evidence.

As the right of the plaintiff to recover is based exclusively upon the book, it becomes necessary to scrutinize the testimony to determine whether or not error was committed in its admission.

The plaintiff was permitted to testify that the book in question was one in which he kept the accounts of patients visiting him and whom he treated; that the entries were made by him on the respective dates shown by the entries; that the books showed an account with the decedent; that the page of his account book purporting to show his attendance in this case was an account which he made up and entered each time the decedent came to his office. Besides proving by another physician, who claims to have been present at the plaintiff's office on the occasion of some visits made by the decedent to the plaintiff, and who gave no evidence regarding the book entries, there were called by the plaintiff two patients or persons by whom it was sought to prove that they had settled their accounts with the plaintiff by his books. Unless it was made clearly to appear that these two persons, or at least one of them, had settled his accounts with the plaintiff according to his books and upon the strength thereof, the proof that the book was correct was made by the plaintiff alone.

[1] In Swan v. Warner, 197 N. Y. 190, 90 N. E. 430, which was an action brought to recover for professional services rendered as a physician, the court reiterated the much-cited rule laid down in Vosburgh v. Thayer, 12 Johns. 461, 462, governing the admission of a party's books "for the purpose of sustaining his claim in an action like this"; that rule being:

"They ought not to be admitted where there are several charges, unless a foundation is first laid for their admission, by proving that the party had no clerk, that some of the articles charged have been delivered, that the books produced are the account books of the party, and that he keeps fair and honest accounts, and this by those who have dealt and settled with him."

In the case at bar, the two witnesses called to prove that they had settled their accounts with the plaintiff from his book, were Rae and Overbach. Rae testified that whenever the plaintiff had rendered a bill he paid it; that the account in the book then shown to the witness was an accurate and true statement of the account between him and the plaintiff "at the time rendered." When asked whether he ever saw the book before, he answered that he did not recall; that he did not know whether he ever went to the plaintiff's office to look at his books; that he never questioned the plaintiff's bill; that he kept track of all his visits, "but no track of his books." Nothing testified to by this witness can fairly be said to permit the conclusion to be drawn that he had ever settled his account with the plaintiff from his book.

The witness Overbach, when shown what purported to be her account, said that "she had never seen that account before," but was allowed to say "Yes" to the question that the account shown to her was "a true and accurate statement of the account" between her and the plaintiff "for professional services rendered" to her. Her further reply of "Never," to a question whether she had ever had any differences with the plaintiff as to the rendition of accounts for his services, does not aid the plaintiff in his contention, and, as in the

case of the witness Rae, the witness Overbach testified to nothing from which it can be found that she had settled her accounts with the plaintiff from his book. An examination of the book itself discloses that as to this witness the account, which appears to have been for $5, was billed to the witness five times without any entry of its payment appearing, although the book shows that the custom of the plaintiff was to mark the account "Paid" above or opposite the amount for which the bill was sent to his various patients when the bills were apparently paid. Therefore it could not be said that this witness had even settled her account by the book of the plaintiff, even had she testified that such was the fact, so far as concerned such reasonable accuracy of the book as entitled it to be an evidentiary document. To make such witnesses competent, they must testify that they settled their accounts by the plaintiff's book, and not by bills rendered to them. Stone v. Cronin, 72 App. Div. 565, 76 N. Y. Supp. 605; Powell v. Murphy, 18 App. Div. 25, 45 N. Y. Supp. 374; Wright v. Hicks, 61 App. Div. 491, 70 N. Y. Supp. 675.

[2] If this analysis of the testimony is correct, there was nothing left in the case to prove that the plaintiff kept correct books of account, apart from his own testimony, and that was insufficient to authorize the reception of a book under the account book rule. Davis v. Seaman, 64 Hun, 572, 19 N. Y. Supp. 260, and cases hereinbefore cited.

Besides the testimony of the plaintiff above adverted to, namely, that his book showed an account with the decedent of entries made each time the decedent was in his office, the plaintiff was further allowed to testify that the entry in his book of the amount of his claim against the testator was for a bill "rendered," that the account of the decedent was never paid, and that the entry therein of $450 represented the amount due for services rendered to the decedent. Inspection of the alleged account, as well as many other entries in the book of the plaintiff for attendance upon other persons, shows that the plaintiff entered dates only (from which it might be inferred that each date represented a professional visit), that no money charge whatever appears opposite each visit, but that at the end of a group of dates appear the words, "Sent" on such and such a date, and the amount opposite that statement. For instance, in this case, the entry at the end of the group of visits reads: "Sent June 28, 1913. $450.00." The total number of visits indicated is 30, and it may be that they were reasonably worth the aggregate sum of $450; but we have no means of knowing that fact, other than the mere entry of that amount upon the book, no attempt having been made to prove the value of the services. The amount entered, without proof of the value of the services, is the amount for which judgment was given against the estate.

A more fatal feature of the use of the entry in evidence is the day on which the bill for $450 was sent, namely, June 28, 1913, and which was subsequent to the death of the defendant's testator, which occurred on June 8, 1913. Practically every question asked of the plaintiff, together with the admission of the book itself, was duly objected to on the ground that the plaintiff was not competent to testify under

section 829 of the Code of Civil Procedure and that the book was incompetent evidence; and appropriate exceptions were taken by the defendant's counsel to the adverse rulings. Davis v. Seaman, supra, held that testimony by the plaintiff himself as to the correctness of his books, in a suit for professional services alleged to have been rendered by him to the intestate of the defendant, related to a personal transaction or communication between the witness and the deceased person, and that his evidence was incompetent against the administrators of such decedent. See, also, Wright v. Hicks, supra, and Knight v. Cunnington, 6 Hun, 100, 105.

In Russell v. Hitchcock, 105 App. Div. 315, 93 N. Y. Supp. 950, it was held that, upon the trial of an action brought by a physician to recover for professional services rendered by the plaintiff to the defendant's intestate, the plaintiff is incompetent, under section 829 of the Code of Civil Procedure, to testify, after having looked at his account book for the purpose of refreshing his recollection, that he saw the intestate on several dates therein specified and that all the visits therein charged against the intestate were made by him, and that he delivered annual statements of the account to the intestate and that she kept them without objection.

While it would seem from the ruling in Davis v. Seaman, supra, that plaintiff's own proof of the correctness of his books was erroneously received in that case, as in contravention of the prohibition contained in section 829 of the Code of Civil Procedure, it is possible that the case would not have gone so far, had the book appeared to have been regularly kept, and had there been, in addition, competent evidence of the rendition of some services and the testimony of others who were shown to have settled with plaintiff according to his books, from which it could have been found that the plaintiff kept correct books. See Matter of Runions, 71 Misc. Rep. 641, 642, 130 N. Y. Supp. 1039.

The account book rule was said in as recent a case as Smith v. Smith, 163 N. Y. 171, 57 N. E. 300, 52 L. R. A. 545, to be still an important one in the administration of justice, in case where the party kept no clerk able to testify to the truth of the entries in his books, and where, unless they are admitted, great inconvenience and a denial of justice may follow.

[3] Where it becomes necessary for a party to identify his books of accounts, and to testify that he kept no clerk, and that his custom was to make entries therein in the usual course of business, with regularity, I see no reason why such testimony should be regarded as circumventing section 829 of the Code of Civil Procedure. Standing alone, it proves nothing, for such testimony by a party is but preliminary to the more important testimony of persons who settled their accounts with him by his books. In the case of a physician, the books should show visits to patients, regularly entered in the course of professional duties. Their total number furnish a basis for proof by other physicians of value according to the accustomed charges in the locality, and when coupled with independent evidence that some of

the visits were actually made, and that other patients had settled their accounts with the physician from his books, the entries of his visits or attendance upon them therein stated being correct and true, a physician's book of visits is then open for the inspection of the court, and, if found free from suspicion and sufficiently orderly to convey intelligence upon perusal, the book becomes competent evidence of the visits before the court or jury, as the case may be.

[4, 5] The plaintiff's own testimony here, as to his having an account with the decedent in his book, that it was a true transcript of the transactions between him and the decedent, and that the account was never paid, was erroneously received, as the plaintiff was incompetent to prove the same. Nor could the value of his services be proved by the entry which he made of the bill sent to the estate, and his testimony regarding this entry was inadmissible. And for the reasons already given, the book itself should not have been admitted.

The judgment appealed from should be reversed, and a new trial ordered, with costs to abide the event. Case set for trial on the 23d day of November, 1914.

KELLY and BLACKMAR, JJ., concur.